## TRIMBLE et al. v. KANSAS CITY, SHREVEPORT & GULF RAILWAY COMPANY, Appellant.

### Division One, February 22, 1907.

1. **ATTORNEY FEES:** Receivership: Auxiliary Companies. Three insolvent railway companies, owning together a line of road from Kansas City to Port Arthur and certain terminal lines, all operated by one company which held the stock of the other two and had issued its bonds covered by mortgages on all the lines, were brought into court by separate suits, the principal suit being to foreclose the mortgage. Thereupon, in order to perfect a reorganization of the properties, the attorneys of the principal company managed ancillary suits brought against the other two, obtained the transfer of all the suits from the State courts to the United States Circuit Court, had receivers appointed for all the roads and the receivership extended over the entire line, and succeeded in perfecting the reorganization of a company which took over all the properties, and thereby one entire railway system was preserved, and the value of the properties greatly enhanced. *Held*, in a suit by the attorneys against one of the auxiliary companies for compensation for their services, that there was evidence that they had rendered services for it under the same kind of a contract they had with the principal company, and payment of that company did not acquit the auxiliary company of its obligation to pay for such services.

2. ———: Time Employed. The time engaged by attorneys in rendering a beneficial service to a client is of minor importance

in determining the value of the service.  The amount involved, the responsibilities assumed and the benefits obtained are of more importance.

Appeal from Jackson Circuit Court. — *Hon. A. F. Evans,* Judge.

AFFIRMED.

*S. W. Moore, Cyrus Crane* and *Samuel W. Sawyer* for appellant.

There was no express contract covering the rendition of the services in question, and no obligation to pay for them can arise from the circumstances of this case.  2 Clark & Skyles, Law of Agency, p. 1058; Lamar v. Hall, 129 Fed. 84; Muscott v. Stubbs, 24 Kan. 522; Roselius v. Delechaise, 5 La. Ann. 481, 52 Am. Dec. 597; Westmoreland v. Martin, 24 S. C. 238; Wailes v. Brown, 27 La. Ann. 411; Hersled v. Moss, 28 Ind. 354; Jones v. Wood, 76 Pa. St. 410; Smith v. Lyford, 24 Me. 150; Bank v. Benton, 59 Ky. (2 Metc.) 243; Railroad v. Larned, 26 Ill. 220; Grimball v. Cruse, 70 Ala. 544; Simms v. Floyd, 65 Ga. 719; Kirkpatick v. Railroad, 52 Kan. 104; Trust Co. v. Kneeland, 138 U. S. 414; Turner v. Meyer, 23 Iowa 391; Sayles, Texas Civil Statutes 1897, secs. 4367, 4368, 4369.

*John A. Eaton* for respondents.

(1)  In the first case against the Kansas City, Pittsburg & Gulf Railroad Company, this court affirmed the judgment of the circuit court in Trimble v. Kansas City, Pittsburg & Gulf Railroad Company, 180 Mo. 574; in which case the facts were similar to those in this case.  In the second case, against the Texarkana & Fort Smith Railway Company, this court affirmed the judgment of the court below, 199 Mo. 44.  The opinion in that case is based upon facts substantially iden-

tical with those in this case. These decisions are decisive of this case. While appellant has, without the support of the facts, endeavored to point a distinction, it is clear that none of any merit whatever exists, and the brief shows a reprint, to a large extent, of the same argument and a citation of many of the same authorities examined in the former case. (2) The defendant below (appellant here), The Kansas City, Shreveport & Gulf Railway Company, was a party in its own behalf in the negotiations and in the proceedings in the receivership suit in which the legal services sued for were rendered, and accepted the benefits, advantages and results of the services, and in law contracted and became obligated to pay the reasonable value of such services. Reinhard on Agency, sec. 83; Weeks on Attorneys at Law, secs. 187, 339 and 340; Clark & Skyles on Agency, secs. 56 and 691; Taussig v. Railroad, 166 Mo. 28; s. c., 186 Mo. 269; Webb v. Browning, 14 Mo. 355; Forsyth v. Doolittle, 120 U. S. 73; Ebel v. Stringer (Neb.), 102 N. W. 466; Southgate v. Railroad, 61 Mo. 89; Kiley v. Forsee, 57 Mo. 390; Seals v. Edmondson, 73 Ala. 295; Davis v. Trimble (Ark.), 88 S. W. 920; Brown v. Arnold, 131 Fed. 723. (3) After the first day of April, 1899, and the appointment of separate receivers for the properties of the three defendants in the receivership suit, one of said defendants being the Kansas City, Shreveport & Gulf Railway Company, the prior relations in respect to the property of each became and were severed in law and in fact, and the property of the Gulf Company was not similarly situated or administered in the receivership suit with that of the defendant, the Shreveport Company, and the defendant company did enter into the negotiations and proceedings in which the services sued for were rendered, for the primary purpose in its own behalf of preserving its property as

a part of an entire system of railroad under the management of a reorganized corporation. Davis v. Walker 131 Ala. 204; Cook on Corporations, sec. 709; Railroad v. Railroad, 51 Fed. 309; Fitzgerald v. Railroad, 45 Fed. 813; Water Works Co. v. Kansas City, 78 Fed. 428; Alderson on Receivers, pp. 199 and 348; Trust Co. v. Railroad, 150 U. S. 287. (4) The appointment of receivers in the state court in Jackson county, Missouri, over the property of the Kansas City, Pittsburg & Gulf Railroad Company, and the appointment of different receivers in the district court of Caddo Parish, Louisiana, over the defendant's property, operated in law to cancel, suspend and set aside all existing and previous relations and contracts between the Gulf Company and the defendant company. This proposition requires no extended discussion. It has the support of both reason and principle, and is declared by all of the decided cases. Alderson on Receivers, and cases cited in notes, pp. 199 and 348; Trust Co. v. Railroad, 150 U. S. 287.

WOODSON, J.—This is an action originating in the circuit court of Jackson county, seeking to recover the sum of $10,000, attorney fees, for services alleged to have been rendered, by respondents, for the appellant, during a period of time extending from April 1, 1899, to March 20, 1900.

The facts of the case are substantially as follows:

The Kansas City, Pittsburg & Gulf Railroad Company, which will hereafter be called the Pittsburg Company, operated a line of railroad from Kansas City, Missouri, to Port Arthur, in the State of Texas; and also operated certain terminal railroads at each end thereof. The line of road belonged to three different companies: The Pittsburg, the Kansas City, Shreveport & Gulf Railway Company, which will hereafter be

called the Shreveport Company, and the Texarkana & Fort Smith Railway Company, which will hereafter be called the Fort Smith Company. Through construction and traffic arrangements, the two latter companies bore the relation of auxiliary companies to the former, the exact nature of which is not material to be inquired into in this case. That part of the line lying in the State of Louisiana belonged to the Shreveport Company, the defendant; that part lying in Arkansas and Texas belonged to the Pittsburg Company, but, as stated above, the entire line was operated by the latter company.

The Pittsburg Company owned practically all the bonds and securities of the other two companies, amounting to many millions of dollars. All of the property of the Pittsburg Company was mortgaged to the State Trust Company of New York, as trustee, which will hereafter be called the Trust Company, to secure its outstanding bonds, aggregating several millions of dollars.

That on and prior to the first day of April, 1899, the Pittsburg Company was in great financial stress, which involved the Shreveport and Fort Smith companies. Which condition of the companies caused the stockholders and other interested parties to counsel and negotiate among themselves and others, including the respondents, as to how the best interest of all parties could be conserved. After much consultation, it was finally concluded that a reorganization and consolidation of all the companies was the most feasible mode to accomplish that end.

In pursuance of said scheme, on April 1, 1899, Charles E. Granis et al. instituted a suit in the circuit court of Jackson county against the Pittsburg Company, it having defaulted in the payment of the installment of interest upon its bonds, due at that time, alleging insolvency, and prayed for the appointment of re-

ceivers to take charge of the road. Receivers were appointed, who qualified and took possession of the road and property of the Pittsburg Company.

Immediately thereafter ancillary suits were instituted and carried forward to extend the receivership over the entire line of the Pittsburg Company. About the same time an independent suit was instituted in the district court of Caddo parish, Louisiana, for the purpose of extending the receivership over the property of the defendant in the State of Louisiana.

Thereafter, on April 6, 1899, the suit which was instituted in the circuit court of Jackson county was removed to the circuit court of the United States, for the Western Division of the Western District of Missouri.

On the same day the Trust Company instituted a suit, in the United States Circuit Court, for the Western Division of Missouri, for the foreclosure of the mortgage against the Pittsburg Company, and for the appointment of receivers.

From and after April 1, 1899, said negotiations were continued and further negotiations were entered into between the various parties interested in the Pittsburg, Shreveport, Fort Smith and the terminal companies, looking to and having for their object a consolidation of all of the said interests and properties.

Up to April 28th all of the suits and proceedings instituted, and had, in all the State courts, affecting all the companies and their properties, were instituted and conducted by the respondents.

On the 28th of April, 1899, as a result of said negotiations, the Trust Company filed an amended bill in its case against the Pittsburg Company, in which the Fort Smith and the defendant, the Shreveport companies were made defendants, and the two latter companies entered their appearances by respondents, as their solicitors.

Immediately thereafter an ancillary suit was insti-

tuted in the circuit court of the United States for the Western District of Louisiana, which was begun for the purpose of aiding the consummation of the negotiations and plan of reorganization and consolidation begun and carried through and by the said negotiations and foreclosure suit of the Trust Company.

Pursuant to said negotiations all ancillary suits pending in the State courts were then dismissed.

Pursuant to this general plan the United States Circuit Court, at Kansas City, appointed receivers for the Pittsburg Company, and by and through ancillary suits filed in the other States, the receivership was extended over the entire line, which included the properties of the Fort Smith and Shreveport companies.

Thereafter there was a final decree entered in the suit of the Trust Company against the Pittsburg, Shreveport and Fort Smith companies, and on March 19, 1900, all the property, stocks and bonds of said companies were sold, under said decree, and in pursuance of said plan of reorganization, to a purchasing or reorganizing company; and under said plan the Pittsburg, Fort Smith and Shreveport companies received in exchange for their property, sold under said decree — — — shares of stock and bonds of the new or consolidated company, which then owned the entire line of railroad extending from Kansas City to Port Arthur, including the terminals at each end thereof.

Respondents represented the Shreveport Company, the appellant, in all the proceedings in the United States Circuit Court, entered its appearances, filed all papers required, and represented it generally in all the proceedings.

Appellant introduced evidence tending to prove respondents did not represent it in said litigation, but did represent the Pittsburg Company, and that they had been fully paid for all services rendered the latter company.

A jury was waived, and the trial was had before the court, which, after hearing the evidence, found for respondents in the sum of $10,000.

Appellant filed motions for new trial and in arrest, which were overruled, and in due time appealed the cause to this court.

I. This is one of three suits instituted by respondents to recover attorney fees for legal services rendered in the litigation mentioned in the foregoing statement. Each was for $10,000. The first was against the Pittsburg Company, the second against the Fort Smith Company, and this is the third. The trial in each resulted in a judgment for respondents for the sum of $10,000. All of them have been appealed to this court. The first is reported in 180 Mo. 574, and the second in 199 Mo. 44, and both of them were affirmed. And we are now asked to pass upon the third.

The appellant earnestly contends that it did not employ respondents; that they did not represent it in the litigation mentioned; and that they performed no legal services for it; and asks this court to review the evidence in the case in order to verify its contention.

The position of the appellant seems to be that the Pittsburg Company was the owner of the appellant company, and that whatever services were rendered by respondents were for that company, and that they had been fully paid therefor by it.

There was a great deal of evidence introduced in this case tending to show the character of the litigation between the Trust Company and the various railway companies; the character of the services performed by respondents; the parties for whom they were rendered, and the value of those services. The appellant's abstract of record devotes about one hundred and fifty pages of printed evidence to those matters, and respondents' additional abstract contains twenty pages more relating to the same subjects.

If we assume or find that the Pittsburg Company was the parent company, and owned the Shreveport and Fort Smith companies, and that the former was the principal subject-matter of the litigation, and that the two latter companies were mere incidents thereto, **or** assets of the former, then there is great force in the contention of appellant that the employment of respondents was by and for the Pittsburg Company, and there is much evidence in the record tending to establish that theory of the case. But if we look at the case as presented by respondents, then a different conclusion might be reached. From their viewpoint we see three insolvent railway corporations, the Pittsburg, Shreveport and Fort Smith, owning a line of railroad extending from Kansas City, Missouri, to Port Arthur, Texas, being operated by the former, all of which were threatened with litigation which would result in a total loss of all of their properties unless some kind of reorganization of all the companies could be arranged or perfected.

With that idea in view, respondents contend that they instituted suit in the circuit court of Jackson county against the Pittsburg Company, and had receivers appointed therefor, and later had the receivership extended over the entire line, by courts of competent jurisdiction, in which ancillary suits were brought for that purpose; and that by these proceedings the continuous line, as one entire railway system, was preserved, which fact greatly enhanced the value of the properties of all of said companies.

When the evidence in this record is viewed and weighed in the light of all the facts and circumstances surrounding the parties, the companies and their properties, we are unable to say there was no evidence which would warrant the court in finding for the respondents. While it is true there was no evidence of an express contract of employment, yet when we con-

sider the facts that respondents did represent all three companies, in both the State and Federal courts, and that no one else ever represented the Shreveport and Fort Smith companies in either of said courts, we are constrained to hold that there was ample evidence to justify the finding of the trial court.

The facts in the case of respondents against the Fort Smith Company, hereinbefore mentioned, are substantially the same as are the facts in this case; and this court arrived at the same conclusions in that case that we have reached here.

Counsel for appellant have, with great learning and industry, collected, cited and discussed many cases bearing upon the question involved in this case; and we fully concur with them in the contention, that third parties do not become liable to an attorney for fees by reason of the fact that they are also equally interested in the case with his clients, and stand by without objection and accept the benefit of his services, which extends to all parties interested in the litigation. [2 Clark & Skyles on Agency, p. 2058.]

Respondents' case is not based upon the theory that they had been employed by the Pittsburg Company, and that the services performed by them for it were equally beneficial to the appellant, and because of that benefit, the law would raise an implied promise on its part to pay them for those incidental services and benefits. The respondents plant their right of recovery against the appellant upon the same character of contract which it had with the Pittsburg and Fort Smith companies, and we concur in that view of the case.

In oral argument, counsel for appellant laid much stress upon the fact that the services were performed in a comparatively short period of time.

While it is true, the time taken in the performance of legal services should be taken into consideration in fixing the value thereof, yet it is of minor importance

in comparison to the character of the litigation, the amount involved, the responsibilities assumed, and the benefits derived. The benficial results obtained by counsel for their clients are the chief matters to take into consideration in estimating the value of the services.

The judgment of the circuit court was for the right parties, and it is affirmed. *Valliant, J.,* concurs; *Lamm* and *Graves, JJ.,* concur in the result.