## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Matthew J. Elkin | Brent R. Dechert |
| Deputy Public Defender | Kokomo, Indiana |
| Kokomo, Indiana | |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| L.B., <br> *Appellant,* <br><br> v. <br><br> A.L., <br> *Appellee-Petitioner* | December 30, 2015 <br><br> Court of Appeals Case No. 34A05-1506-AD-680 <br><br> Appeal from the Howard Circuit Court <br><br> The Honorable Lynn Murray, Judge <br><br> Trial Court Cause No. 34C01-1412-AD-63 |

**Baker, Judge.**

[1] L.B. appeals the judgment of the trial court, which granted A.L.'s petition to adopt L.B.'s biological child, K.L. L.B. argues that the petition was defective and that there was insufficient evidence to support the trial court's decision. Finding the procedural defects waived and the evidence sufficient, we affirm.

## Facts[1]

[2] B.L. (Father) and L.B. (Biological Mother) are the biological parents of K.L. (Child), who was born on March 18, 2003. Father and Biological Mother were not married at the time, but Father's paternity was established in March 2004 in a paternity action brought by Biological Mother against Father. Until July 2012, Biological Mother was the primary custodian of Child, and Father exercised his parenting time.

[3] In October 2011, Father filed a petition to modify the custody arrangement based on the concern that Biological Mother was in an abusive relationship. After a July 2012 hearing, custody was shifted—Father would have primary physical custody and Biological Mother would have parenting time.

[4] In March 2013, Father filed an emergency petition to again modify the custody arrangement after Biological Mother overdosed on drugs and cut herself. After a hearing, Biological Mother's visitation was further reduced to alternate

---

[1] L.B. filed a motion to strike an appendix provided by A.L. on the grounds that some of the documents are from the paternity action between L.B. and B.L., which was tried under a different cause number. The trial court in this case, however, took judicial notice of that case, as is permitted by Indiana Evidence Rule 201(b)(5). Appellant's motion to strike is therefore denied in a separate order issued contemporaneously with this decision.

weekends, and only under the supervision of Biological Mother's mother. This arrangement also fell through, however, when Biological Mother's mother declined to continue her supervision. A new arrangement was settled where Biological Mother would visit on Wednesday evenings under the supervision of Father or his wife, A.L. (Adoptive Mother).

[5] In November 2013, Biological Mother ceased attending these Wednesday visits, telling Father that she had a conflict with her work schedule. From November 7, 2013, until late January 2015, when Adoptive Mother filed this present action for adoption, Biological Mother did not attend any visitations, nor did she contact Father or Adoptive Mother seeking to schedule any visitations. The only contact Biological Mother had with Child during this fifteen-month period consisted of four or five texts sent on holidays, the last of which was in March 2014.

[6] On December 8, 2014, Adoptive Mother filed a petition to adopt Child. Father gave his consent, and Adoptive Mother's petition argued that Biological Mother's consent was not needed due to a failure to communicate significantly for a period greater than a year. In late January 2015, Biological Mother began visiting Child again, after being personally served with a notice of adoption in court on January 16, 2015, by Father's and Adoptive Mother's counsel.

[7] Since 2013, Child has participated in counseling with a school social worker. Child said she had negative feelings toward Biological Mother and believed that Biological Mother placed herself before others. At the sessions, the social

worker noticed that Child became angry and upset when visitation resumed in January 2015.

[8] Although the January 2015 notice of adoption informed Biological Mother that she had thirty days to contest the petition, she did not file a timely objection. She did, however, attend what was scheduled as an uncontested adoption hearing on February 27, 2015, to voice her objection. The trial court appointed a public defender, and a contested adoption hearing was held on May 21, 2015. The trial court, while acknowledging that Biological Mother's objections were waived due to their not being filed within thirty days of being served with the petition, went on to the merits of Biological Mother's claims; found that she had gone more than a year without significant communication with Child; found that Adoptive Mother and Child had formed a parent-child bond; found that Child's best interests would be served by adoption; and entered a Decree of Adoption. Mother now appeals.

## Discussion and Decision

[9] Biological Mother's arguments can be separated into two categories. First, she argues that a long list of technical deficiencies renders the adoption petition invalid. Second, she argues that the evidence was insufficient to conclude that adoption was appropriate.

## I. Procedural Defects

[10] As for the deficiencies in the adoption petition, Biological Mother lists the following: an improper summons; no (or late) adoption notice as required by

Indiana Code section 31-19-4.5-3; the petition does not list Adoptive Mother's marriage to Father; the petition does not list Child's sex and race; the petition does not indicate the length of time that Child has resided with Father and Adoptive Mother; there was no medical report as required by Indiana Code section 31-19-2-7; Adoptive Mother paid no adoption history fee; Adoptive Mother paid no putative father registry fee; Adoptive Mother included no response from the putative registry search; and there was no Department of Health affidavit regarding Child's medical history.

[11] Biological Mother did not raise a single one of these concerns to the trial court. As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *Pitman v. Pitman*, 717 N.E.2d 627, 633 (Ind. Ct. App. 1999). The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002).

[12] Looking at the record, it is fairly clear what happened in this case. Biological Mother is correct that Adoptive Mother's December 8, 2014, petition was lacking several pieces of information required by statute. This is no small issue—because the statutes governing adoption are in derogation of the common law, they must be strictly construed as to all procedural requirements. *In re Gray*, 425 N.E.2d 728, 730 (Ind. Ct. App. 1981). In order to defeat a natural parent's right of custody, persons seeking to adopt have the burden of

demonstrating strict compliance with all particular essentials of the adoption statutes. *Id.*

[13] But this case amply demonstrates another purpose of the rule of waiver: to encourage parties to take care of necessary administrative details at the trial court level instead of springing such arguments at the appellate stage and asking for a dismissal. If Biological Mother were truly concerned that the petition did not list Child's age and sex, or that the putative father registry had not been consulted (despite the fact that she had earlier brought the action against Father that proved his paternity), she could have raised the issues to the trial court. The trial court would then have instructed Adoptive Mother to fix her petition. If Biological Mother had raised these issues and the trial court proceeded with the adoption regardless, then these issues would be ripe for appellate review. Indeed, it is clear that, in a case like this, the petition went unfixed precisely because Biological Mother never said a word about it.

[14] In some circumstances, it is possible that procedural irregularities in family law proceedings may be of such significance that they deprive a parent of procedural due process with respect to the termination of his or her parental rights. *A.P. v. Porter Cnty. Office of Family and Children*, 734 N.E.2d 1107, 1112-13 (Ind. Ct. App. 2000). But we do not have such a case here—Biological Mother knew from the very first petition that Adoptive Mother was seeking to adopt Child, and the petition made clear Adoptive Mother's position that a lack of significant communication rendered Biological Mother's consent unnecessary pursuant to Indiana Code section 31-19-9-8(a). Despite her failure

to respond within thirty days, the trial court gave Biological Mother an opportunity to challenge this argument, and then found against her on the merits. This was not a deprivation of due process.

[15] We also note that while Adoptive Mother did not follow the prescribed procedures, she fulfilled some of the technical requirements after the petition had been granted. She has paid the adoption history fee (Appellee's App. 34), and she has paid the putative father registry search fee (Appellee's App. 35-40). To be sure, these were completed after the adoption, contrary to the procedure contemplated in the statutes. But we see little reason to remand this case and consume further judicial resources simply to have the trial court say that the requirements are now met.

[16] Because Biological Mother failed to raise these issues to the trial court, and because she was permitted to challenge Adoptive Mother's argument on the merits, this argument fails. We now turn to the sufficiency of the evidence.

## II. Sufficiency of the Evidence

[17] Indiana Code section 31-19-9-1 generally provides that parental consent is required for an adoption petition. Indiana Code section 31-19-9-8, however, provides that consent to adoption is not required from a parent who has abandoned a child for at least six months immediately preceding the petition, or from a parent of a child in the custody of another who fails without justifiable cause to communicate significantly with the child for a period greater than a year. Biological Mother argues that the trial court did not have sufficient

evidence from which it could find that her consent was not required. Since the statute is written in the disjunctive such that the existence of either circumstance would provide ground to dispense with consent, *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014), we will only focus on whether there is sufficient evidence that Biological Mother went a year without significant communication with Child.

[18] When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). We presume that the trial court's decision is correct, and we consider the evidence in the light most favorable to the decision. *Id.* When the trial court has made findings of fact and conclusions of law, we apply a two-tiered standard of review: we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* Factual findings will be displaced only if they are clearly erroneous, which only occurs if the record lacks any evidence or reasonable inferences to support the findings. *Id.*

[19] Biological Mother makes several arguments as to why the trial court should have decided differently: she argues that she was going through a difficult period in her life; that Father and Adoptive Mother did not go out of their way to encourage Child to communicate with Biological Mother; that Biological Mother may have misunderstood her rights and obligations; that Biological

Mother and Child have a bond; that Biological Mother recently found housing; and that adoption is not in Child's best interest.

[20] All of this amounts to a request that we reweigh the evidence, which we cannot do. The record reflects the following: that Biological Mother did not visit Child from November 2013 until January 2015; that she only sent four or five short texts on holidays; that she had used drugs and cut herself; that Child and Adoptive Mother had a good relationship and were close; and that Biological Mother had unstable housing. Given this evidence, we cannot say that the trial court's factual findings that Biological Mother failed to communicate significantly with Child for over a year and that adoption was in Child's best interest were clearly erroneous.

[21] The judgment of the trial court is affirmed.

Bradford, J., and Pyle, J., concur.